# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

August 26, 2024

LAURA A. AUSTIN, CLERK
BY  s/ S. MELVIN
      DEPUTY CLERK

---

JENNIFER A. MULLER,

$\qquad$ *Plaintiff,*

v.

ALG TRUSTEE, LLC, ET AL.,

$\qquad$ *Defendants.*

CASE NO. 3:24-cv-00014

MEMORANDUM OPINION
& ORDER

JUDGE NORMAN K. MOON

---

Defendants in this case have filed motions to dismiss the claims brought by Plaintiff Jennifer A. Muller and Crossclaim Plaintiffs Deborah Gray and James Smith.

Jennifer Muller, the original Plaintiff in this case, owned and rented out a house in Lake Monticello. The home was foreclosed on because her mortgage payments were $60 short each month, after an escrow increase at the start of 2022. Plaintiff alleges that she only received notice about the monthly required payment increase, and the foreclosure itself, once the home was sold. In addition, she alleges that a vacant lot next to the house, which she owns but was not encumbered by the mortgage, was improperly conveyed after the foreclosure sale.

Plaintiff brings claims against PNC Bank, which held the Deed of Trust on the house; ALG Trustee, which effectuated the foreclosure; and FFC Properties, LLC, which purchased the house at the foreclosure sale. She also names the current owners of the house, Deborah J. Gray and James Smith, due to their interest in the property rather than any alleged misdeeds. Gray and Smith, in turn, bring crossclaims against ALG Trustee and FFC Properties for breach of deed warranty, actual or constructive fraud, and common law conspiracy.

1

PNC Bank and ALG Trustee have moved to dismiss the claims and crossclaims against them. The Court will deny PNC's motion, and grant in part ALG's motions, for the reasons explained below. In large part, the Motions to Dismiss raise issues which the Court cannot resolve at this stage.

### PLAINTIFF MULLER'S COMPLAINT AND THE MOTIONS TO DISMISS HER CLAIMS

First, the Court will address the allegations and motions as to the original Complaint in this case: that brought by Jennifer Muller ("Plaintiff").

BACKGROUND[1]

### 1. Plaintiff's Loans with PNC

The facts of this case are somewhat convoluted. Plaintiff and her husband, who has since passed away, purchased the House Parcel in 2004. ¶¶ 12, 29. They obtained a loan from National City Mortgage, which was the predecessor in interest of Defendant PNC Bank ¶ 13. The mortgage loan was for $171,050 and attached a lien to the House Parcel. *Id.*

In 2005, Plaintiff and her husband purchased the Vacant Lot. ¶ 14. At the time of purchase, the mortgage loan was increased to $241,600, "and a new Deed of Trust, which encumbered both the House Parcel and the Vacant Lot, was executed and recorded in the Fluvanna County Clerk's Office[.]" *Id.*

Later in 2005, after the Vacant Lot purchase, Plaintiff and her husband took out a $21,350 line of credit. ¶ 16. This line of credit was consolidated with an existing $25,000 line of credit, and encumbered both the House Parcel and the Vacant Lot through a Credit Line Deed of Trust. ¶¶ 16, 17.

---

[1] The following facts are drawn from the Complaint, Dkt. 1-1, unless otherwise noted, and are assumed to be true for purposes of resolving the motions to dismiss. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (stating the appropriate standard of review).

When National City Mortgage and PNC merged in 2014, the mortgage loan was modified with an updated promissory note for $209,800. ¶ 19. Only Plaintiff's husband signed this 2014 updated note. *Id.* The updated promissory note modified the mortgage loan so that it was secured *only* by the House Parcel, as reflected in a Mortgage Loan Deed of Trust ("DOT"). ¶¶ 20, 21. Confusingly, though, while the Mortgage Loan DOT includes a legal description of only the House Parcel, it references *two* Tax/Parcel ID numbers. Dkt. 1-1 Exhibit 2 (DOT at 20). These two ID numbers (18A-**6**-434 and 18A-**6**-435) are one digit removed from being the correct Tax/Parcel ID numbers of the House Parcel (18A-**5**-434) and Vacant Lot (18A-**5**-435) (emphasis added). *Id.*; ¶ 2.

Also in 2014, as a result of PNC-National City merger, the Line of Credit Deed of Trust was subordinated to the lien of the mortgage loan Deed of Trust. ¶ 23. The legal description on the subordination, like the mortgage loan DOT, described only the House Parcel but included the two inaccurate tax map numbers. ¶ 24.

In 2019, Plaintiff and her husband moved to an apartment in Midlothian, Virginia, on Kerri Cove Court (the "Kerry Cove Apartment.") ¶ 25. Plaintiff alleges that PNC was notified of the address change and began sending Line of Credit Loan statements to the Kerry Cove Apartment. ¶¶ 26–27. Also in 2019, Plaintiff and her husband began renting out the House Parcel. ¶ 28.

Plaintiff's husband died in January 2020. ¶ 29. A few months later, in May 2020, Plaintiff moved from the Kerry Cove Apartment to a house on Needle Rush Way, Midlothian (the "Midlothian House.") ¶ 30. PNC was notified of the change, and began sending Line of Credit Loan statements to the Midlothian House. ¶¶ 31–32.

Also in the months following her husband's death in 2020, Plaintiff authorized PNC to communicate directly with her father, Ron De Spirito, who was assisting her to make timely payments on the Mortgage Loan and the Line of Credit Loan. ¶ 33. In August 2020, De Spirito started making payments on both of these loans in person at branches of PNC in Virginia (Woodbridge and Manassas) or in Florida (at Sarasota). ¶ 34.

PNC had Plaintiff's phone number on file, and used it to call her in December 2020 to notify her that the escrow amount on the Mortgage Loan was being increased for 2021. ¶¶ 35–36. De Spirito began making the increased payments ($1,486.91) on the Mortgage Loan on behalf of Plaintiff, and did so through January 2023. ¶ 37. Plaintiff's payments on both the Mortgage Loan and Line of Credit Loan have been timely since the inception of the loans. ¶ 38.

The escrow requirement for the Mortgage Loan increased again in January 2022, by $60.87/month, but this time PNC did not call Plaintiff or mail written notice to the Midlothian House. ¶¶ 39–31, 58. Paragraph 22 of the Mortgage Loan DOT requires written notice prior to acceleration or foreclosure. PNC had been sending correspondence relating to the Line of Credit to Plaintiff at the Midlothian House since 2020. ¶ 51.

In 2022, De Spirito continued making timely payments on both loans in person at PNC branches, though the Mortgage Loan payments did not include the additional $60.87/month. ¶¶ 54, 58. De Spirito got receipts for the payments from August 2020 through January 2023. ¶ 55. PNC did not *reject* the short payments until July or August of 2022, at which point PNC reversed and held the prior 2022 payments—before eventually applying them to the Mortgage Loan. ¶¶ 57, 58, 72–74. Plaintiff was not notified of the $60.87/month increase and the consequent shortfall of her payments. ¶ 59. De Spirito received no indication of a problem while making the payments in person. ¶ 60.

4

Plaintiff alleges on information and belief that in July of 2022, PNC sent an acceleration letter to her prior address, the Kerry Cove Apartment, which she had moved from two years before. ¶ 62. Plaintiff believes that the acceleration letter must have been returned to PNC. ¶ 64. PNC continued to send Plaintiff correspondence related to the Line of Credit at the Midlothian House, her current address. ¶ 51.

The first notice sent to Plaintiff at the Midlothian House—her current address—regarding the issues with the Mortgage Loan was sent after the property had been foreclosed on and sold. ¶ 70.

2. *Defendant ALG Trustee Conducts the Foreclosure*

Plaintiff alleges on information and belief that PNC gave ALG its file on Plaintiff and her loans. ¶ 75. ALG sent a notice to the Kerri Cove Apartment on November 14, 2022, stating that the Mortgage Loan was in arrears by $13,587.97 as of October 17, 2022. (Complaint Exhibit 4). The arrears notice only refers to the House Parcel. ¶ 79. ALG did not attempt to call Plaintiff, or notify her via mail at her Midlothian House as to the time, date and place of the foreclosure sale of her property. ¶ 77–78.

ALG Trustee placed a foreclosure sale advertisement (Complaint Exhibit 5) in The Daily Progress, a Charlottesville paper. ¶ 81. The advertisement, which ran December 9 and December 16, 2022, only includes the legal description of the House Parcel, and not the Vacant Lot. ¶¶ 80–81, 83.

The foreclosure sale took place on January 13, 2023. ¶ 84. FFC Properties, LLC, submitted the winning bid of $218,000, and purchased the House Parcel (then assessed at $323,600).

### 3. *Events After the Foreclosure Sale*

About three weeks after the foreclosure sale, Plaintiff received a letter from PNC, dated January 27, 2023, and sent to her Midlothian House—her current address. ¶ 86. It notified her that the Mortgage Loan had been referred to foreclosure and enclosed a check refunding her most recent mortgage payment of $1,486.91. (Complaint Exhibit 6). The letter was addressed to "Estate of Karl Muller III c/o Mrs. Muller." ¶ 87. It did not say that the foreclosure sale had already taken place, but rather included information about reinstating the loan. ¶ 88. Although PNC had accepted and then reversed multiple mortgage payments paid in 2022 (*see* ¶¶ 57, 58, 72–74), this one check was the only payment refunded to Plaintiff. ¶ 90.

PNC also sent another letter to the Midlothian House, dated January 30, 2023, stating that a refund check had been sent "several months ago" without specifying what the refund was for. ¶ 89. (Complaint Exhibit 7).

Meanwhile, after purchasing the House Parcel at the foreclosure sale, FFC Properties taped a handwritten note to the door of the home on the House Parcel, stating that FFC was the new owner. (Complaint Exhibit 8) ¶ 91. The House Parcel tenants found the note, and contacted Michael Johnson, who was the property manager. ¶¶ 92–94. Johnson contacted Plaintiff and De Spirito. ¶ 94. De Spirito contacted PNC, who told him that it was a scam. ¶ 95. De Spirito relayed this to Johnson, who then contacted Brian Fowler, the principal of FFC. ¶¶ 96–97. Johnson was told that the sale was not a scam and that FFC's point of contact for all related matters was its attorney, Jeff Ward. ¶ 98. (Email exchange attached to Complaint as Exhibit 9).

On February 9, 2023, Plaintiff's counsel spoke to and wrote a letter to Ward about objections to the foreclosure sale. (Complaint Exhibit 10). ¶ 99. Between April and July 2023, Plaintiff's counsel called Ward and left messages on this same topic. ¶ 100. On April 28, 2023,

via letter, Plaintiff's counsel notified PNC as well as counsel for ALG Trustee and FFC of the issues with the foreclosure sale. (Complaint Exhibit 11). ¶ 101. On July 14, Plaintiff's counsel sent Ward a further letter demanding that FFC not sell the property. (Complaint Exhibit 12). ¶ 102.

FFC sold the House Parcel to Defendants James Smith and Deborah Gray for $397,000 on July 18, 2023. ¶ 103.

### 4. *Further Complications: The Vacant Lot*

The Trustee's Deed recorded after the foreclosure sale (Complaint Exhibit 13) provides the legal description only of the House Parcel, not the Vacant Lot. ¶ 103. But the Trustee's Deed did include the correct Tax ID numbers for *both* the House Parcel and the Vacant Lot. And, strangely, Fluvanna County GIS initially listed FFC as having purchased *only* the Vacant Lot. ¶ 105. Later, the GIS reflected the sale of the House Parcel to Smith and Gray. ¶ 108.

Plaintiff's counsel pointed out that the Vacant Lot was not included in any foreclosure notices or the Trustee's Deed in the April 28, 2023 letter to PNC (as well as to counsel for ALG Trustee and FFC) (Complaint Exhibit 13). ¶ 106.

In a letter dated June 1, 2023, counsel for ALG confirmed that ALG only foreclosed on the House Parcel. (Complaint Exhibit 14). ¶ 110. Plaintiff's counsel provided a copy of this letter to FFC. (Complaint Exhibit 15). ¶ 111. The Vacant Lot is still listed "in Fluvanna County" as being owned by FFC. ¶ 112.

### 5. *Plaintiff Jennifer Muller's Claims*

First, Plaintiff seeks declaratory judgment that PNC and ALG failed to follow the terms of the Line of Credit, the Mortgage loan, and the procedural requirements of Va. Code § 55.1-321. Plaintiff also seek a declaration that PNC failed to follow the requirements of 12 C.F.R. §§

1024.38 for timely and accurate disclosures—and that because the House Parcel and the Vacant Lot were not properly foreclosed on, she is the rightful owner of both properties. In the alternative, she requests damages of at least $250,000 plus attorney's fees and costs. ¶¶ 113–133.

Second, Plaintiff bring a breach of contract claim against PNC and ALG Trustee for failing to properly notify her of the default and foreclosure sale. ¶¶ 135–156.

Third, Plaintiff brings a claim against PNC for breach of contract, through the contract's incorporation of the procedures required by the Real Estate Settlement Procedures Act (RESPA).

Fourth, Plaintiff brings a claim for breach of fiduciary duty against ALG Trustee for failing to provide her with proper written notice of the mortgage loan deficiency, and of the foreclosure sale. Plaintiff also claims that ALG violated its fiduciary duty by negligently referencing "a second parcel" in its notices, creating confusion about whether the Vacant Lot had been foreclosed on or not. ¶¶ 175–190.

Fifth, Plaintiff brings a claim for slander of title against FFC and ALG Trustee, based on the allegation that ALG prepared and executed a deed which appears to transfer ownership of the Vacant Lot, and FFC recorded the deed, even though FFC had notice that the Vacant Lot was not part of the foreclosure sale. Neither ALG nor FFC has taken steps to rescind the deed. ¶¶ 191–202.

Sixth, Plaintiff brings a claim of quiet title as to the Vacant Lot.

ANALYSIS

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable

inferences drawn in a plaintiff's favor, *Rubenstein*, 825 F.3d at 212. A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation omitted). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (providing that "only a complaint that states a plausible claim for relief survives a motion to dismiss").

### 1.  *Preliminary issues*

#### a.  *Plaintiff's standing to enforce the Deed of Trust*

A question underlying multiple claims in this case is whether Plaintiff has the right to enforce the terms of the Deed of Trust (DOT) encumbering her property. PNC argues that she does not, because only Plaintiff's deceased husband signed the promissory note for the loan from PNC. Dkt. 34-2 at 7–8. And according to the text of the DOT, Plaintiff—who co-signed the instrument to "only to mortgage, grant and convey [her] interest in the Property" neither had the right to object to modifications of its terms, nor was personally obligated "to pay the sums secured by this Security Instrument[.]" (Deed of Trust ¶ 13, Dkt. 1-1 at 43). The DOT also

provides that, subject to provisions, "any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Interest in writing, and is approved by Lender, shall obtain all Borrower's rights and benefits under this Security Instrument." *Id.* "Borrower" is defined in the DOT as "Karl Muller, III, and [Plaintiff], Husband and Wife, As Tenants By the Entirety With Full Rights of Survivorship As At Common Law, And Not As Tenants In Common." (Deed of Trust at 1, Dkt. 1-1 at 34).

In the Court's view, Plaintiff's allegations suggest that PNC functionally accepted her as the successor borrower to her husband. She alleges that in December 2020—nearly twelve months after her husband's death in January of that year—PNC notified her of the escrow payment increase. Complaint ¶¶ 29, 35. Plaintiff alleges that she, or her father on her behalf, continued making timely payments to PNC. *Id.* ¶ 38. PNC accepted these payments all through 2021 and into 2022, until at some point that year, PNC reversed payments for January, February, and March 2022. *Id.* ¶¶ 54–57. Meanwhile, De Spirito was making timely payments—without PNC providing any indication that the money he was handing over was not being applied to the mortgage loan. ¶ 56. Whether the conduct of PNC did in fact amount to waiver of the DOT's language stating that assumption of the Borrower's obligations must be in writing is a fact-intensive inquiry not well suited to resolution at this phase of litigation.[2]

To support its position that Plaintiff lacks standing, PNC cites cases under the laws of Maryland, North Carolina, and Louisiana. PNC does not offer any Virginia precedent to support its position—and the cases it cites are also factually distinguishable. *See Newton v. Nationstar*

---

[2] This is notwithstanding the DOT's provision, ¶ 13, as to forbearance not being construed as a waiver—this language appears to address the Lender's right to exercise its rights against the original Borrower, not the issue of whether another party has become a successor in interest to the original borrower.

*Mortg. LLC*, No. 7:15-CV-16-D, 2015 WL 3413256, at *2 (E.D.N.C. May 26, 2015) (co-signer

had made no effort to make payments until foreclosure was in process); *Jeansonne v. Generation*

*Mortg. Co.*, 644 F. App'x 355, 356 (5th Cir. 2016) (co-signer had, before death of her spouse,

already made inter vivos donation of her entire interest in the home to her spouse, who then took

out a mortgage; the lender promptly accelerated the loan upon the death of the borrower spouse);

*Nyhart v. PNC Bank, N.A.,* No. CV PX 15-2241, 2016 WL 6996744, at *3 (D. Md. Nov. 30,

2016) (co-signer's spouse, the borrower, was still living and was a co-plaintiff; there was no

issue of assuming the borrower's role).

### b.  *Plaintiff adequately alleged notice of her address*

A thread which runs through several arguments by PNC and ALG is that they had no

obligation to send notifications to the Midlothian House, having never received proper notice

that this was Plaintiff's address of record for the DOT. However, Plaintiff alleges generally that

PNC Bank had notice of the address change to the Midlothian House. Complaint ¶ 31. She

alleges that PNC sent her mail related to the LOC at this latest address ¶¶ 31–32.  And crucially,

to the Court's mind, she alleges that after the Foreclosure Sale, PNC Bank sent a Foreclosure

Notice to the Midlothian House. ¶¶ 86–88. This indicates that PNC Bank *did* have Plaintiff's

address in its files, in connection to the DOT. Taking all the allegations in the Complaint as true

and making reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has, for

purposes of the present analysis, adequately alleged that PNC (and therefore ALG, which would

have obtained Plaintiff's information from PNC) had notice of her address.

### c.  *Attorney's fees and other relief*

Plaintiff asserts that she is entitled to attorney's fees based on a statutory argument which

lacks specificity. It begins with VA. CODE § 6.2-1628 (B). Dkt. 49 at 13. This statutory provision

allows for fees in suits brought by borrowers based on violations of, among other provisions, VA. CODE § 6.2-1616(D). That provision—VA. CODE § 6.2-1616—is titled "other prohibitions applicable to mortgage brokers[.]" As one might expect, the provision deals with the duties of mortgage *brokers*, whom this Court understands to be those in the business of facilitating mortgage loans for others. (*See* VA. CODE § 6.2-1600, "'Mortgage broker' means any person who directly or indirectly negotiates, places or finds mortgage loans for others, or offers to negotiate, place or find mortgage loans for others. …" It is not clear to the Court that any party to this suit would be considered a mortgage broker.) A subsection of this provision—VA. CODE § 6.2-1616 (D)—states: "The requirements of this section are in addition to the requirements of the federal Real Estate Settlement Procedures Act of 1974 (12 U.S.C. § 2601 et seq.) and regulations adopted thereunder." Plaintiff asserts that violation of RESPA provides "an independent statutory basis for attorney's fees." Dkt. 49 at 13. She does not, however, identify the specific fee-shifting provision of REPSA that would be applicable to her case. The Court would require clearer articulation of her entitlement to attorney's fees in the event that Plaintiff prevails on a claim based on RESPA.

The parties dispute whether recission is an appropriate remedy in this case. Until the Court has a clearer and more concrete record to assess, it will not opine on the propriety of recission as a potential remedy.

### 2. *Plaintiff's Claims*

#### a. *Count One: Declaratory Judgment*

Plaintiff seeks a declaration as to her property rights and the conduct of Defendants ALG and PNC. ALG and PNC both seek to have this claim dismissed as inappropriate or duplicative. Dkt. 34-2 at 17–18; Dkt. 22-1 at 8–9.

In the Fourth Circuit, declaratory relief is appropriate "[w]hen …the declaratory relief sought: (1) 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and (2) 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (quoting *Aetna Casualty & Surety Co. v. Quarles,* 92 F.2d 321, 325 (4th Cir.1937)). (*See also Pitrolo v. Cnty. of Buncombe, N.C.*, 589 F. App'x 619, 628 (4th Cir. 2014) (citing *Aetna v. Ind-Com* for the additional factor of "whether the declaratory judgment action is being used merely as a device for procedural fencing.")). Generally, the Court has discretion over whether to issue a declaratory judgment, and "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57.

At this time, the Court will refrain from dismissing Count One. Given the complexity of the facts and the contractual relationships in this case, the Court concludes that declaratory relief may yet be appropriate means of clarifying and settling legal questions.

### b.   Count Two: Breach of Contract

Plaintiff brings this claim against PNC based on its alleged failure to notify her about several issues: the escrow increase that took effect in January 2022, PNC's declaration that the Mortgage Loan was in default, the acceleration, and the referral to foreclosure. Complaint ¶¶ 135–146. Plaintiff argues, in general terms, that PNC violated RESPA when it accelerated the loan. *Id.* ¶ 145.

As to ALG, Plaintiff's alleges that "as Substitute Trustee, ALG Trustee was required by statute and the Mortgage Loan documents, to properly notify [Plaintiff] of the default and foreclosure sale, which it knowingly failed to do." Complaint ¶ 148. She also cites as applicable

law VA. CODE § 55.1-321(A): "[T]he trustee or the party secured shall give written notice of the time, date, and place of any proposed sale in execution of a deed of trust[.]"

The Court notes that the DOT provision regarding acceleration does require notices prior to invocation of the power of sale "as required by applicable law[.]" ¶ 22.

Because Plaintiff alleges that PNC had notice of her address, and that none of the contractually required notices were sent to that address, she adequately alleges that ALG and PNC breached their contractual duties.[3]

### c.  Count Three: Breach of Contract (Violation of RESPA)

In this claim, brought against PNC alone, Plaintiff reiterates that PNC failed to notify her as to the escrow shortage (as required by RESPA), and also failed to provide notice about her mitigation options, that it considered the mortgage loan to be in default, and that the loan entered acceleration. Complaint ¶¶ 167–171.

PNC asserts that only some provisions of RESPA were incorporated into the Mortgage Loan Deed of Trust, and none of those provisions were violated. Dkt. 34-2 at 9–11. However, while making this argument, PNC points to language in the DOT expressly incorporating RESPA's requirements as to escrow deficiencies, and notice regarding them. *Id*. at 10; DOT § 3. Title X, the implementing regulation of RESPA, lays out courses of action open to a lender in the event of escrow shortage, which include doing nothing or requiring the borrower to pay up (within 30 days or over 12 months, depending on the size of the deficiency). 12 C.F.R. § 1024 (f)(3).

---

[3] PNC and ALG also argue that there was no obligation to send notices to Plaintiff at the Midlothian House; this was discussed above as a threshold issue.

Plaintiff alleges that PNC Bank did not follow this regulation, including a requirement to provide annual notice of any escrow shortage. Dkt. 1-1 ¶¶ 47–49. Given Plaintiff's allegations as to lack of notice, the Court considers this claim to be sufficiently pled.

### d. Count Four: Breach of Fiduciary Duty

Plaintiff brings this claim against ALG, based on its alleged failure to provide her with proper written notice of the mortgage loan deficiency, and of the foreclosure sale. Plaintiff also claims that ALG Trustee violated its fiduciary duty by negligently referencing "a second parcel" in its notices, creating confusion about whether the Vacant Lot had been foreclosed on or not. ¶¶ 175–190. Additionally, Plaintiff alleges that ALG prepared a deed which purported to transfer the Vacant Lot to FFC—when the Vacant Lot was not, in fact, foreclosed on. ¶ 192. ALG argues in response that the claim is groundless, because it acted impartially and the failure to give notice is a statutory duty rather than one which comes from the fiduciary relationship.

ALG is correct that the notice requirement is statutory—see VA. CODE 55.1-321—and also that the Supreme Court of Virginia has delineated between the statutory and common law duties of a trustee under a deed of trust. However, this differentiation was in the context of reiterating that common law duties attach *in addition* to those statutory fiduciary duties laid out in the Code of Virginia. *See Crosby v. ALG Tr., LLC*, 822 S.E.2d 185, 191 (Va. 2018). The common law duties of a trustee under a deed of trust include acting as "impartial agents for both parties, [who must] act in all sales for the interest of the debtor as well as the creditor." *Id.* at 190 (quoting *Quarles v. Lacy*, 18 Va. 251, 259-60 (1814)).

At this point, the Court must accept as true Plaintiff's allegation that ALG prepared a deed to transfer a piece of her property that had not been properly foreclosed on—which is hardly the act of an impartial fiduciary. While ALG disputes the validity of the purported deed,

determining its falsity is beyond the scope of the Court's analysis when considering ALG's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), Dkt. 22. The inclusion of an additional Tax ID number in the post-foreclosure Deed of Trust (*see* Complaint Exhibit 13) is also concerning. Consequently, Plaintiff's claim for breach of fiduciary duty can proceed for the time being.

### e.   Count Five: Slander of Title

Plaintiff brings this claim against ALG and FFC regarding her title to the Vacant Lot. The elements of a claim for slander of title are "(1) the defendant's publication of false words, (2) with malice, (3) that disparages plaintiff's property, and (4) special damages suffered by the plaintiff." *Poindexter v. Mercedes-Benz Credit Corp.*, No. 1:13-CV-1200, 2014 WL 3827366, at *2 (E.D. Va. July 25, 2014), *aff'd*, 792 F.3d 406 (4th Cir. 2015) (quoting *Warran v. Bank of Marion,* 618 F.Supp. 317, 320 (W.D.Va.1985)). "To prove slander of title, [Plaintiff] must show that [Defendant] acted with malice or in reckless disregard of the truth or falsity of the statement[.]" *Norman v. Wells Fargo Bank, N.A.*., No. 3:17-CV-585, 2018 WL 1037048, at *4 (E.D. Va. Feb. 23, 2018), *appeal dismissed and remanded*, 749 F. App'x 205 (4th Cir. 2019) (quoting *Poindexter*, 792 F.3d at 411 (internal quotation omitted)).

ALG argues that the claim should be dismissed against it because it took no actions that slandered Plaintiff's title, did not act with malice, and published nothing. Dkt. 22-1 at 17–18. But again, the Court must take Plaintiff's allegations as true. And, notwithstanding ALG's various representations that it did *not* foreclose on the Vacant Lot or attempt to transfer it, Plaintiff alleges that ALG issued a deed purporting to transfer property that it had no right to transfer. As alleged, this far exceeds negligence. And the alleged execution of the deed, followed by FFC's recording of it, implicates ALG in the publication of false words that have caused hassle and

legal expense for Plaintiff. Until the record shows that ALG was not involved in the issuance of the deed granting the Vacant Lot to FFC, the claim can proceed.

   *f. Count Six: Quiet Title*

  Plaintiff seeks to quiet her title as to the Vacant Lot. She refers to erroneous Fluvanna County records, but does not clearly identify which defendants (other than FFC) are the parties against whom she asserts this claim. "In an action to cancel a cloud upon the title to real estate, all parties who have or claim any interest, right or title under the instrument or instruments of writing sought to be cancelled should be made parties defendant." 15 *Michie's Jurisprudence of Virginia and West Virginia*, Quieting Title § 12.

  At this point, taking all Plaintiff's allegations as true, the Court does not understand ALG to possess or claim any present interest in the Vacant Lot, or to have an interest recorded in the Fluvanna County land records. For this reason, the Court will grant ALG's motion to have this claim dismissed against it.

**Crossclaims Brought by Deborah Gray and James Smith
and ALG's Motion to Dismiss**

  Deborah Gray and James Smith ("Gray-Smith"), who purchased the properties at issue from FFC, bring five crossclaims against ALG and FFC. Dkt. 16. The Court will address the three claims which name ALG. (Two crossclaims claim are solely against FFC, which has not filed a motion to dismiss).

Background

  The facts in this section are drawn from the Answer, Affirmative Defenses and Crossclaims of Gray-Smith, Dkt. 16.

17

Gray-Smith sought to relocate from California to Virginia in the spring of 2023, and looked online for a home. ¶ 9.[4] They found a listing on Zillow for 462 Jefferson Drive, Palmyra, Virginia, which described the House Parcel and stated that both the House Parcel and an adjacent wooded lot conveyed with the sale. ¶¶ 10–12. Gray-Smith retained a local real estate agent, who contacted the listing agent for the property and gave Gray-Smith a video tour of the properties. ¶¶ 13–14.

On June 13, 2023, Gray-Smith made an offer to purchase the properties; FFC accepted the offer by signature of its manager Brian Fowler two days later. ¶¶ 15–16. The property description in the purchase contract correspond to Plots 434 and 435 in the Lake Monticello Subdivision Plat—that is, the House Parcel and the Vacant Lot, respectively. ¶¶ 18–20. The contract purchase price for the combined properties was $397,000. ¶ 21. The contract also provided that the properties would convey from FFC by general warranty deed with English Covenants of Title, and also required FFC to remediate problems revealed through a title examination. ¶ 22.

Smith-Grey contracted with Closure Title & Settlement Co, LLC to examine title; the title insurance commitment included this section:

> Duly authorized and executed DEED OF CORRECTION from ALG Trustee, LLC, Substitute Trustee, a Virginia Limited Liability Company, to FFC Properties, LLC, a Virginia Limited Liability Company, to be executed and recorded at closing.
>
> NOTE: DEED OF CORRECTION IS TO CONVEY LOT 435. [sic] WHICH WAS NOT CONVEYED PER THE LEGAL TO FFC PROPERTIES FROM ALG TRUSTEE IN THE TRUSTEE'S DEED.

Ex. G-S 3, Schedule B, Part 1 – Requirements, paragraph 4(a).

---

[4] Gray-Smith's crossclaim complaint first places this in spring 2024, but other dates in the filing (e.g., ¶¶ 16, 25) indicate that this is a typo and the home search occurred in 2023.

Gray-Smith allege that FFC obtained from ALG, and recorded on June 17, 2023, a deed purporting to transfer *both* the House Parcel and the Vacant Lot from ALG to FFC. ¶¶ 28–31. (G-S Exhibit 4.) ALG Trustee maintains that this deed is a forgery, *see* Dkt. 42 at 17–18.

On July 18, 2023, Smith-Gray closed on the Properties, exchanging the purchase price for a deed from FFC that purported to transfer both the House Parcel and the Vacant Lot by General Warranty with English Covenants of Title. ¶ 34. The deed was recorded the same day. G-S Exhibit 5.

Gray-Smith moved to the properties in August 2023, and have remained there since. ¶¶ 38–39. Before service of the Complaint, Gray-Smith had no notice that there was an ownership dispute. ¶ 40.

As far as notice to other parties, though, Gray-Smith allege, and support with exhibits, that:

- FFC and Atlantic Title Group (affiliated with ALG Trustee) had notice on January 26, 2023, that Plaintiff Jennifer Muller disputed the sale. ¶ 44, Ex. G-S 6.

- Plaintiff's counsel sent a letter to FFC's counsel Jeff Ward on February 9, 2023, further expounding on the dispute about the foreclosure. ¶ 45, Ex. G-S 7 (the same letter is Complaint Exhibit 10);

- On April 28, 2023, via letter, Plaintiff's counsel notified PNC as well as counsel for ALG Trustee and FFC of the issues with the foreclosure sale, with specific reference to the omission of the Vacant Lot from the deed of trust that had been foreclosed on. ¶ 46, Ex. G-S 8 (This letter is also submitted as Complaint Exhibit 11);

- On June 1, 2023, Orans PC, representing ALG Trustee, wrote to Plaintiff's counsel stating that ALG Trustee had *not* foreclosed on the Vacant Lot. ¶ 47, Ex. G-S 9 (Complaint Exhibit 14).

- On June 5, 2023, Plaintiff's counsel and her colleague send emails to Jeff Ward, counsel for FFC, and attached the letter from ALG Trustee stating that the Vacant Lot was not part of the foreclosure. ¶ 48, Ex. G-s 10 (Complaint Exhibit 15).

In sum, Gray-Smith allege that FFC and ALG had actual notice on January 26, 2023, that the validity of the foreclosure was contested, and notice by April 28, 2023, that the Vacant Lot was not properly foreclosed on. ¶ 49.

The House Parcel and the Vacant Lot were listed online for sale on or about May 1, 2023. ¶ 50. ALG and FFC had notice of the disputes when Gray-Smith entered into the purchase contract with FFC and when ALG allegedly prepared the Deed of Correction purporting to transfer the Vacant Lot. ¶¶ 51–52. At the Closing on July 18, 2023, FFC delivered to its insurer and to Gray-Smith an affidavit attesting "The Affiant(s) is/are the owners of the Land, and no one has ever question or disputed my/our ownership." ¶ 53, Ex. G-S 11.

THE CROSSCLAIMS AGAINST ALG

Gray-Smith bring five claims. The Court omits discussion of Counts One and Three, which only name FFC.

In Count Two, Gray-Smith bring a Breech of Deed Warranty claim against ALG Trustee based on the deed purporting to transfer both the House Parcel and Vacant Lot by special warranty—which carries an obligation to defend title, which they assert ALG Trustee has not done. ¶¶ 66–76.

ALG contends that it is vigorously defending title as to the House Parcel, and that it has no obligation to defend title to the Vacant Lot because the deed which includes the Vacant Lot is a forgery. Dkt. 39 at 6-7. Once again, the Court is constrained by the posture of those case: it cannot yet make a finding as to whether the deed was forged. This prevents the Court from dismissing this claim against ALG, although ALG *is* defending the title of the House Parcel by engaging in the case before the Court.

In Count Four, Smith-Gray bring a claim against ALG and FFC for Fraud or Constructive Fraud, based on, inter alia, the false statement in the Deed of Correction that the foreclosure included the Vacant Lot. ¶¶ 90–110.

The elements of fraud are "1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005) (quoting *Prospect Development Co. v. Bershader,* 515 S.E.2d 291, 297 (Va. 1999)). The elements of constructive fraud are less demanding as to intent. These elements are: (1) a false representation (2) of a material fact (3) made innocently or negligently, (4) injury to the damaged party (5) due to reliance on the misrepresentation. *See Prospect Dev. Co.*, *id.*

Under Virginia law, "a claim of fraud does not require direct contact or privity between the defendant and the plaintiff. A complaint must merely allege that the defendant knew or had reason to know that the plaintiff would rely on the misrepresentation." *Alexander v. Se. Wholesale Corp*., 978 F. Supp. 2d 615, 623 (E.D. Va. 2013) *citing Mortarino v. Consultant Engineering Services,* 467 S.E.2d 778 (Va. 1996). Virginia courts have applied this principle to situations where a party is alleged to have made a false representation about a product with the expectation that *some* consumer would rely on it. *See Eubank v. Ford Motor Credit Co.,* 54 Va.

Cir. 170 (Va. Cir. Ct. 2000); *Branin v. TMC Enterprises*, LLC, 832 F.Supp.2d 646 (W.D.Va. 2011).

ALG argues that Gray-Smith fail to plead fraud specifically by *ALG*, as opposed to fraud by FFC, which sold them the properties; ALG had no direct contact with Gray-Smith. Specifically as to reliance, ALG argues that Gray-Smith could not have reasonably relied on the fraudulent Deed of Correction, because it purports to transfer property which was not reflected in the Deed of Trust or the Appointment of Trustee. Dkt. 39 at 11–14.

The Court concludes that Gray-Smith have sufficiently alleged their claim, with the appropriate degree of specificity, at this stage. Virginia law does not require proximity of contract or communication between the alleged fraudster and the claimant. Regarding reliance, the property record in this case is convoluted (and in fact it does, at least according to Plaintiff Muller's complaint, include a Deed of Trust for the benefit of PNC's predecessor in interest that encumbered both the House Parcel and the Vacant Lot. Complaint, ¶ 14). Moreover, the Trustee's Deed issued by ALG after the foreclosure sale includes the Tax ID number of the Vacant Lot. Dkt. 16-4. Here, where Gray-Smith refused to move forward with the transaction without the Deed of Correction—and in light of Va. Code § 8.01-389(C), which states that "recitals of any fact in a deed or deed of trust of record conveying any interest in real property shall be prima facie evidence of that fact"—the Court must conclude that they have reasonably pled reliance. Given the allegation that ALG prepared and executed the erroneous Deed of Correction with knowledge that it was false, leading to litigation and loss for Gray-Smith (Crossclaim Complaint ¶¶ 101–108), the elements are sufficiently pleaded against ALG.

ALG also contends that Gray-Smith by the economic loss doctrine and the source of duty rule bar Smith-Gray from recovering on their tort claims, because the alleged malfeasance is

rooted in contract. Dkt. 39 at 7–9. *See Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004). ("[L]osses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts.")

Gray-Smith respond that Virginia precedent states that, where a fraudulent act occurs *before* the formation of a contractual relationship, it falls outside of this bar. *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 363, 699 S.E.2d 483, 490 (2010) (finding action for fraud in the inducement was not barred by the economic loss or source of duty rule where a seller lied about flooring before a home was purchased). Until the record offers clarity that ALG had nothing to do with the allegedly fraudulent deed, the alleged pre-contract fraud fits neatly within this exception to the source of duty rule.

In Count Five, Gray-Smith bring a claim against both ALG Trustee and FFC for common law conspiracy, based on the transaction purporting to transfer the Vacant Lot, despite ALG Trustee and FFC having specific awareness that the Vacant Lot had not been foreclosed on. Crossclaim Complaint ¶¶ 91–123. ALG argues that this claim against it cannot proceed because the fraud claim is deficient, and it is barred by the economic loss doctrine.

Gray-Smith do not respond to ALG's arguments as they apply to the civil conspiracy claim—or otherwise argue in support of the civil conspiracy claim. Dkts. 31, 43. The Court therefore concludes that this claim is waived as to ALG.

## CONCLUSION

For the reasons explained above, the Court **DENIES** PNC's Motion to Dismiss, Dkt. 34.

It **GRANTS** in part ALG's Motion to Dismiss (as to Count Six: Quiet Title) but otherwise **DENIES** the motion. Dkt. 22.

ALG's Motion to Dismiss Crossclaims is **GRANTED** (as to Count Five: Civil

Conspiracy) but is otherwise **DENIED**. Dkt. 26.

The Clerk of Court is directed to send a certified copy of this Memorandum Opinion and

Order to all counsel of record.

It is so **ORDERED**.

Entered this 26th day of August, 2024.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE